THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRIAN GARRETT, et al., | Case No. 2:18-cv-00692 |
| Plaintiffs, | |
| | Judge Michael H. Watson |
| v. | |
| | Chief Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |
| STEVE SNYDER-HILL, et al., | Case No. 2:18-cv-00736 |
| Plaintiffs, | Judge Michael H. Watson |
| v. | Chief Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |

**DEFENDANT THE OHIO STATE UNIVERSITY'S
(1) RESPONSE TO PLAINTIFFS' MOTION FOR CLARIFICATION OF THE COURT'S MAY 24, 2019 ORDER PERMITTING DISCOVERY AND (2) REQUEST FOR IN-PERSON STATUS CONFERENCE**

Defendant The Ohio State University ("Ohio State") respectfully (1) provides the following response to Plaintiffs' Motion For Clarification Of The Court's May 24, 2019 Order Permitting Discovery, Case No. 2:18-cv-00736, Doc. #81 (the "Motion"), and (2) requests an in-person status conference with the Court and counsel in the various consolidated actions to discuss the status of the case, including mediation.  Ohio State states as follows:

I.     **INTRODUCTION.**

Plaintiffs' Motion acknowledges that Ohio State has made "repeated public statements, and motion to this Court, that it wants a full investigation and wants the public to know the full story."  Motion at 3.  Plaintiffs are correct.  Ohio State has been, and continues to be, committed

to transparency.

Ohio State also has been committed to transparency within the context of this litigation. In addition to the above independent actions taken by Ohio State, and in an effort to facilitate mediation on June 15, 2019, Ohio State responded informally on June 13, 2019, and then formally on July 1, 2019, to plaintiffs' discovery requests, which consisted of 10 interrogatories and 18 document requests.  As part of its confidential responses to these discovery requests, Ohio State produced an additional 4,186 pages of insurance-related documents and directed plaintiffs to publicly accessible websites where additional responsive documents could be found. Ohio State has not sought any affirmative discovery from plaintiffs to this point so that the parties can focus their efforts on the ongoing mediation proceedings.

Ohio State has been, and remains, fully committed to the ongoing mediation.  Ohio State is actively engaged in mediation discussions with plaintiffs' counsel.  The 182-page Perkins Coie Report, the thousands of pages of Strauss-related records Ohio State publicly released, and Ohio State's responses to discovery requests have adequately informed the mediation-related discussions between the parties.

When a former Ohio State wrestler reported allegations related to Strauss to Ohio State in late March 2018, Ohio State took the allegations seriously from the start.  In rapid response, by April 5, 2018, Ohio State had launched an external, independent investigation into the allegations and reported them to the Columbus Police Department, the Franklin County Prosecuting Attorney's Office, and the Ohio Attorney General's Office.

The Perkins Coie investigation focused on what happened between 1978 and 1998, when Strauss was at Ohio State, and what university leaders in place at the time of Strauss's tenure at Ohio State may have known.  On May 15, 2019, after a thorough, year-long investigation at a

cost of more than $6 million, the independent investigators submitted the 182-page Perkins Coie Report summarizing the investigation and its findings to the university.  Ohio State publicly released a partially redacted version of the Perkins Coie Report on May 17, 2019, and advocated for the public release of the full, unredacted Perkins Coie Report.  *See* https://accessibility.osu.edu/files/final-redacted-strauss-investigation-report-tagged.pdf.

As stated in the Perkins Coie Report, Ohio State "made concerted efforts to accommodate us throughout the entirety of the Independent Investigation"; provided "complete access to University records, and to current University personnel"; "placed no restrictions on the Investigative Team"; "provided significant assistance to the Investigative Team as we undertook efforts to identify and locate former University personnel"; and "encouraged those former employees to cooperate" with the investigators.  *Id*. at 8.  As plaintiffs note in their motion, "Perkins Coie conducted 600 interviews of 520 people."  Motion at 9.

Additionally, Ohio State has publicly released over 17,500 pages of records relating to Dr. Strauss to date, including the following:

- Dr. Strauss' employment file (totaling 228 pages), is available at https://osu.app.box.com/s/3vpauvxvj8hn2h8zdr5qvuykmme2ecro;
- A June 6, 2018 letter from Kathleen Trafford to President Drake and Provost McPheron, regarding the external, independent investigation conducted by Perkins Coie LLP, is available at https://presspage-production-content.s3.amazonaws.com/uploads/2170/traffordletterjune2018.pdf?10000;
- An August 30, 2018 letter from Kathleen Trafford to President Drake and Provost McPheron, regarding the external, independent investigation conducted by Perkins Coie LLP, is available at http://presspage-production-content.s3.amazonaws.com/uploads/2170/traffordletter83018.pdf?10000;
- Records cited in the Perkins Coie Report (totaling 4,159 pages), are available at https://osu.app.box.com/s/upe5kqr5fpccor22j7dngn6n4ngyelm7?page=1; and
- Records containing Strauss' name or information specifically regarding Strauss (totaling 13,296 pages), are available at https://osu.app.box.com/s/wnwmj93328cd1chy5nqx0d03j2fqo8qr.

All of these updates and records are catalogued publicly on a special webpage Ohio State created for the Strauss Investigation. *See* https://compliance.osu.edu/strauss-investigation.html. Ohio State also created a link to the Strauss Investigation materials on its public homepage for additional visibility and access. *See* https://www.osu.edu/. If, and when, additional information or documents which are not privileged, private or confidential become available, Ohio State will make them available to all survivors of Dr. Strauss, beyond just those represented in this litigation, subject to the Court's orders and/or other applicable law.

Through their current motion, however, plaintiffs in the two above-captioned cases are asking the Court to expand the "narrow," mediation-related discovery previously authorized by the Court to include the depositions of six "Non-Cooperative Witnesses," whom plaintiffs define as "OSU's former employees with highly relevant information who refused to cooperate with the [Perkins Coie] investigation," in addition to depositions of other witnesses plaintiffs say they "[u]ndoubtedly" will need. Motion at 2, 6.

Plaintiffs' request is inconsistent with the Court's prior directive "encourag[ing] the parties to focus their efforts on mediation, and any discovery pursued should be narrowly tailored for the purposes of mediation." *See Garrett*, Doc. #90 at 2. In fact, the request appears to be an effort to distract from, or even delay, the mediation.

For these reasons, the Court should schedule a status conference with counsel in the various consolidated actions to discuss the status of the case, including mediation, as Ohio State's counsel suggested in his response to plaintiffs' counsel's message regarding plaintiffs' intent to file this motion.

4

II.       **RELEVANT PROCEDURAL HISTORY.**

On March 15, 2019, the Court appointed Senior United States District Judge Michael R. Barrett to mediate these matters. *See Garrett*, Doc. #69. Subsequently, Judge Barrett scheduled a mediation to begin on June 15, 2019. *See Garrett*, Minute Entry (May 14, 2019).

On May 15, 2019, the Perkins Coie investigators submitted the 182-page Perkins Coie Report, which made specific findings regarding "whether 'the University' had knowledge of such allegations against Strauss during the relevant time period." Perkins Coie Report, Executive Summary, at 1. Ohio State publicly released a partially redacted version of the Perkins Coie Report on May 17, 2019, and advocated for the public release of the full, unredacted Perkins Coie Report.[1] *See Garrett*, Doc. #70.

The Court held a status conference on May 24, 2019, in which counsel for the *Snyder-Hill* plaintiffs requested discovery regarding the identities of Ohio State coaches, administrators, and staff who were unidentified in the Perkins Coie Report "in order to give us a better sense of the scope and scale of the Title IX violation." *See* Transcript of Telephonic Status Conference Proceedings, *Garrett*, Doc. #91 at 8. Although the Court permitted plaintiffs to file motions requesting discovery, the Court questioned whether such discovery was "relevant," or "matter[ed] at this point," and further opined that "the report is going to give you a good deal of information with which to prepare for mediation." *Id.* at 8, 12-14. The Court additionally advised it would not necessarily rule on plaintiffs' discovery motions, stating: "I want everyone

---

[1] The redactions contained information sourced from confidential State Medical Board of Ohio ("State Medical Board") files relating to the State Medical Board's investigations of Strauss in 1996 that was required by law to be redacted. Prior to Ohio State's public release of the partially redacted Perkins Coie Report, Ohio State moved for entry of an order that would have allowed it to release the entire, unredacted Perkins Coie Report to the public. Pursuant to this Court's orders, Ohio State provided a copy of the entire, unredacted Perkins Coie Report to plaintiffs' counsel for use during the Court-ordered mediation under a "Highly Confidential—Attorneys' Eyes Only" designation. Thus, plaintiffs' counsel has superior knowledge compared to the knowledge of the plaintiffs and the non-plaintiff survivors of Strauss.

to focus on mediating in good faith." *Id.* at 14.

Following the May 24, 2019 status conference, the Court denied Ohio State's motions to stay discovery "for the time being." *See Garrett*, Doc. #90 at 2. The Order clarified however: "Nevertheless, the Court encourages the parties to focus their efforts on mediation, and any discovery pursued should be narrowly tailored for the purposes of mediation. The Court will hold a preliminary pretrial conference to establish case deadlines after the parties have exhausted their efforts at mediation." *Id*.

On May 31, 2019, the *Snyder-Hill* and *Garrett* plaintiffs served 10 interrogatories and 18 document requests upon Ohio State, most of which were not "narrowly tailored for the purposes of mediation."[2] In their letter accompanying the discovery requests, counsel for the *Snyder-Hill* plaintiffs requested that Ohio State respond to 8 of the interrogatories and 14 of the document requests on an expedited basis—within 10 days—"[t]o make the June 15, 2019 mediation most productive." As a courtesy, and to facilitate the mediation, Ohio State provided confidential, informal responses and objections to the discovery requests on June 13, 2019, prior to the beginning of the mediation, and confidential, formal responses and objections on July 1, 2019. As part of its confidential responses to these discovery requests, Ohio State produced an additional 4,186 pages of insurance-related documents to plaintiffs on June 13, 2019. **To date, Ohio State has not sought any affirmative discovery from plaintiffs so that the parties can focus their efforts on mediation.**

On June 15, 2019, the parties in the above-captioned cases participated in an all-day mediation session before Judge Barrett. Since June 15, 2019, counsel for the parties have actively continued the mediation in progress.

---

[2] On the same date, amidst the mediation efforts, the *Snyder-Hill* plaintiffs also issued a subpoena to Perkins Coie. The Snyder-Hill plaintiffs reissued the subpoena to Perkins Coie on June 18, 2019.

Prior to the filing of the current motion, counsel for Ohio State suggested to the *Snyder-Hill* plaintiffs' counsel that now would be a good time for an in-person conference with the Court to advise the Court of the status of the mediation. Counsel did not mention this suggestion in plaintiffs' instant motion.

### III. <u>DISCUSSION</u>.

#### A. <u>The Requested Depositions Are Prohibited By The Court's May 24, 2019 Order "[E]ncourag[ing] The Parties To Focus Their Efforts On Mediation, And Any Discovery Pursued Should Be Narrowly Tailored For The Purposes Of Mediation."</u>

The Court directed "the parties to focus their efforts on mediation, and any discovery pursued should be narrowly tailored for the purposes of mediation" in its March 24, 2019 Order.

Plaintiffs seek to depose the non-cooperative witnesses on the grounds that "the mediation is grounded on the incomplete Report" and "Plaintiffs expect these witnesses will further establish OSU's knowledge and deliberate indifference." Motion at 2. Contrary to plaintiffs' characterization of the Perkins Coie Report as "incomplete," the Report is the 182-page product of a thorough, year-long investigation. The investigation was specifically tasked with determining "whether 'the University' had knowledge of such allegations against Strauss during the relevant time period"—the *same* issue for which plaintiffs are now requesting to take depositions. *See* Perkins Coie Report, Executive Summary, at 1. In regard to Ohio State's knowledge, the Perkins Coie Report made specific, detailed factual findings. *Id*. Importantly, the Perkins Coie Report also recognized that, despite certain non-cooperative witnesses, "conflicting witness accounts and the attrition of witness recollection," "an exhaustive accounting of every allegation that we received concerning 'University knowledge' at all levels of personnel—***would have reached the same factual conclusions that we reached here*** . . . ." *Id*. at 9 (emphasis added). No further information was required.

7

The requested depositions are not necessary for the parties to be able to mediate in good faith. Plaintiffs' current request to take depositions is similar to, and overlaps significantly with, the *Snyder-Hill* plaintiffs' request at the May 24, 2019 status conference for discovery regarding the identities of Ohio State coaches, administrators, and staff who were unidentified in the Perkins Coie Report. *See Garrett*, Doc. #91 at 8; Motion at 6 ("The Perkins Coie report does not reveal the identity of most of the Non-Cooperative witnesses. Undoubtedly there will be more Non-Cooperative Witnesses [] with information highly relevant to the mediation[.]"). Although the Court permitted plaintiffs to file motions requesting such discovery, it questioned whether the discovery was "relevant," or "matter[ed] at this point," and further opined that "the report is going to give you a good deal of information with which to prepare for mediation." *See Garrett*, Doc. #91 at 8, 12-14. The Court additionally advised it would not necessarily rule on plaintiffs' discovery motions, stating: "I want everyone to focus on mediating in good faith." *Id.* at 14. Rather than addressing the Court's questions at the May 24, 2019 status conference, the current Motion simply ignores them.

Against this background, if these plaintiffs are declaring an impasse, they should so advise Ohio State, the mediator, and the Court. Ohio State therefore requests an in-person status conference with the Court and counsel in the various related, consolidated actions to discuss the status of the case, including mediation.

    **B.**    <u>**Ohio State Continues To Focus Its Efforts On Mediation.**</u>

Plaintiffs' Motion repeats arguments, initially made in their opposition briefs to Ohio State's pending motions to dismiss, that plaintiffs' Title IX claims did not accrue at the time of the abuse, or, if they did accrue at such time, the statute of limitations should be equitably tolled. Motion at 7-8. All of plaintiffs' arguments, however, were thoroughly addressed in Ohio State's

8

briefings on its motions to dismiss, and refuted by the well-established and consistent Title IX jurisprudence establishing that plaintiffs Title IX claims accrued at the time of the alleged sexual abuse, assault, or harassment, and that the discovery rule and tolling do not apply to plaintiffs' Title IX claims here. *See Garrett*, Docs. #38, 48; *Snyder-Hill*, Docs. #34, 41. Specifically, plaintiffs expressly pled they were aware the acts were inappropriate at the time they occurred (in fact, many complained) decades ago, knew their abuser's identity, and knew their abuser was an Ohio State employee. *See Garrett*, Doc. #38 at 8-12; *Snyder-Hill*, Doc. #34 at 8-15. Plaintiffs Title IX claims are time-barred as a matter of law. Regardless, Ohio State continues to focus its efforts on mediation.

### IV. CONCLUSION.

This Court directed the parties to mediate. That mediation continues in good faith as to all cases and all plaintiffs. If plaintiffs' counsel in Case No. 2:18-cv-00692 and Case No. 2:18-cv-00736 are declaring an impasse, then the Court should hold a status conference in which they can so advise the Court. Ohio State is not declaring an impasse, nor does it appear the plaintiffs in Case No. 2:19-cv-01911, Case No. 2:19-cv-02237, Case No. 2:19-cv-02429, Case No. 2:19-cv-02462, and Case No. 2:19-cv-03165 are doing so.

For the foregoing reasons, the Court should at this time (1) deny Plaintiffs' Motion For Clarification Of The Court's May 24, 2019 Order Permitting Discovery, and (2) set an in-person status conference with the Court and counsel in the various consolidated actions to discuss the status of the case, including mediation.

        DAVID A. YOST
        ATTORNEY GENERAL OF OHIO

By: /s/ Michael H. Carpenter
     Michael H. Carpenter (0015733) (Trial Attorney)
     Timothy R. Bricker (0061872)
     David J. Barthel (0079307)
     Stephen E. Dutton (0096064)
     CARPENTER LIPPS AND LELAND LLP
     280 Plaza, Suite 1300
     280 North High Street
     Columbus, OH 43215
     E-mail: carpenter@carpenterlipps.com
           bricker@carpenterlipps.com
           barthel@carpenterlipps.com
           dutton@carpenterlipps.com

     Special Counsel for Defendant The Ohio State University

## **CERTIFICATE OF SERVICE**

      I certify that a copy of the foregoing was filed electronically on August 16, 2019. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this fling through the Court's ECF system.

      /s/ Michael H. Carpenter
      Trial Attorney for
      Defendant The Ohio State University