IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| STEVE SNYDER-HILL, *et al.*, | Case No. 2:18-cv-00736-MHW-EPD |
| Plaintiffs, | Judge Michael H. Watson |
| v. | Chief Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |

## PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs submit the attached Sixth Circuit opinion as supplemental authority. *See* Exhibit 1. Several days ago, the Sixth Circuit decided *Doe v. University of Kentucky,* No. 4:14-cv-002976 (6th Cir. Aug. 19, 2020), reversing one of the district court opinions on which OSU relies to claim lack of standing. *See* OSU Br. at 20 n. 5 (Dkt. 128). When Jane Doe was sexually assaulted on campus, she was not a student or employee of the university, but sought to participate in school activities and use university facilities. *See* Slip Op. at 1-2, 7. The Sixth Circuit held that Doe had standing because "there remain genuine disputes as to whether she was denied the benefits of an 'education program or activity' furnished by the University." *See* Slip Op. at 6-7. Reversing the District Court's grant of summary judgment, the Circuit explained that Title IX standing should not be analyzed "rigid[ly]," but instead turns on "the sum of all [the plaintiff's] relationships to the [defendant]," *id*. at 67, and it would "defeat" Title IX's broad purpose to "recognize[e] artificial distinctions in the structure or operation of an institution." *Id*. (citation omitted).

The Sixth Circuit's opinion supports Plaintiffs' position that Title IX's broad protections are not limited to the technical classification of a plaintiff's connection to a university (*e.g.*,

student or non-student, employee or independent contractor) but is instead a fact-intensive inquiry and that John Does 30, 42, 47, and 49 have standing to assert Title IX claims against OSU. *See* Pls.' Opp. Br. at 30-34 (Dkt. 133).

| | |
|---|---|
| August 24, 2020 | EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP |
| | By: __/s/ Ilann M. Maazel__ |
| | Ilann M. Maazel (admitted *pro hac vice*) |
| | Debra L. Greenberger (admitted *pro hac vice*) |
| | Marissa Benavides (admitted *pro hac vice*) |
| | 600 Fifth Avenue, 10th Floor |
| | New York, New York 10020 |
| | Phone: (212) 763-5000 |
| | Fax: (212) 763-5001 |
| | E-Mail: imaazel@ecbawm.com |
| | E-Mail: dgreenberger@ecbawm.com |
| | E-Mail: mbenavides@ecbawm.com |
| | |
| | SCOTT ELLIOTT SMITH, LPA |
| | Scott E. Smith (0003749) |
| | Michael L. Dillard, Jr. (0083907) |
| | 5003 Horizons Drive, Suite 100 |
| | Columbus, Ohio 43220 |
| | Phone: (614) 846-1700 |
| | Fax: (614) 486-4987 |
| | E-Mail:ses@sestraillaw.com |
| | E-Mail: mld@sestriallaw.com |
| | |
| | PUBLIC JUSTICE, P.C. |
| | Adele P. Kimmel (admitted *pro hac vice*) |
| | Alexandra Brodsky (admitted *pro hac vice*) |
| | 1620 L Street, NW, Suite 630 |
| | Washington, DC 20036 |
| | Phone: (202) 797-8600 |
| | Fax: (202) 232-7203 |
| | E-mail: akimmel@publicjustice.net |
| | E-mail: abrodsky@publicjustice.net |
| | |
| | *Attorneys for Plaintiffs* |

**CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing document was filed and served, via the Court's CM/ECF system on August 24, 2020, on all counsel of record.

By: /s/ *Ilann M. Maazel*
Ilann M. Maazel

# Exhibit 1

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0267p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JANE DOE,

  *Plaintiff-Appellant*,

  *v.*

UNIVERSITY OF KENTUCKY,

  *Defendant-Appellee*.

No. 19-5126

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:15-cv-00296—Joseph M. Hood, District Judge.

Argued: October 17, 2019

Decided and Filed: August 19, 2020

Before: BOGGS, BATCHELDER, and DONALD, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Linda M. Correia, CORREIA & PUTH, PLLC, Washington, D.C., for Appellant. Bryan H. Beauman, STURGILL, TURNER, BARKER & MOLONEY, PLLC, Lexington, Kentucky, for Appellee. **ON BRIEF:** Linda M. Correia, Roshni C. Shikari, CORREIA & PUTH, PLLC, Washington, D.C., for Appellant. Bryan H. Beauman, Jessica R. Stigall, STURGILL, TURNER, BARKER & MOLONEY, PLLC, Lexington, Kentucky, William E. Thro, UNIVERSITY OF KENTUCKY, Lexington, Kentucky, for Appellee. Demian A. Ordway, M. Theodore Takougang, HOLWELL SHUSTER & GOLDBERG LLP, New York, New York, Emily Martin, Neena Chaudhry, Sunu Chandy, Shiwalit Patel, NATIONAL WOMEN'S LAW CENTER, Washington, D.C., for Amici Curiae.

## OPINION

BERNICE BOUIE DONALD, Circuit Judge. In this matter, we ask whether Plaintiff Jane Doe (hereinafter "Doe") can bring a Title IX, 20 U.S.C. § 1681, claim against a university based on that university's alleged deliberate indifference to a sexual assault by a university student (*i.e.*, a Title IX *Davis* claim, *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999)). Although not technically enrolled at Defendant University of Kentucky (hereinafter "the University"), Doe lived, dined, and participated in student activities on the University's campus. She also hoped to attend the University and was enrolled at a Kentucky community college that allows its students to transfer credits to the University and enroll in the University through a simpler application process. The district court held that Doe could not bring such a claim, finding that Doe was not a student of the University or a participant in any of the University's educational programs or activities. Because we find that Doe has sufficiently shown that there remain genuine disputes as to whether the University denied her the benefit of an "education program or activity," she has standing to bring her *Davis* claim, and we REVERSE and REMAND to the district court for further consideration of the merits of Doe's claim in light of this Court's recent opinion in *Kollaritsch v. Michigan State University Board of Trustees*, 944 F.3d 613, 619-24 (6th Cir. 2019).[1]

## I.

Although the facts and procedural history of this case are somewhat complicated, we can simplify them for purposes of deciding the narrow issue in this case. In fact, the parties agree on most of the facts that are relevant to our decision. Doe attended Bluegrass Community and Technical College ("the Community College"). The Community College was previously known

---

[1] In *Kollaritsch*, this Court, in analyzing several *Davis* claims, held "that a student-victim plaintiff must plead, and ultimately prove, that the school had actual knowledge of actionable sexual harassment and that the school's deliberate indifference to it resulted in further actionable sexual harassment against the student-victim, which caused the Title IX injuries." 944 F.3d at 618. With respect to the plaintiffs in *Kollaritsch*, this Court found that, "[b]ecause none of the plaintiffs in this case suffered any actionable sexual harassment *after* the school's response, they did not suffer 'pervasive' sexual harassment as set out in *Davis*." *Id.*

as Lexington Community College, which was an entity that was wholly owned, governed, and managed by the University. Although the administration of the Community College has now split off from the University, many of its buildings, grounds, and parking areas are still owned and operated by the University. Importantly for this case, students who chose to live on campus at the Community College lived in the *University's* residence halls, as did Doe. Both parties agree that living on campus contributes to learning and leads to more academic success. Doe paid various fees directly to the University, including payments for room, board, and fees for the student government association, student activities, access to the student center, a student health plan, technology, access to the recreation center, and student affairs. The University has two programs that allow the Community College's students to transfer to or earn credits toward a degree at the University. Doe did not yet meet the requirements for either program because she had only been enrolled at the Community College for a few short weeks, but she alleges that she planned to enroll at the University.

Doe alleges that, while she was living on the University's campus, a student enrolled at the University raped her on October 2, 2014.[2] She reported the rape to the University's police department, and the University investigated the allegations. Over the course of two and half years, the University held four different disciplinary hearings. Although the alleged perpetrator was found responsible for the rape at the first three hearings, the University's appeal board overturned the decisions based on procedural deficiencies. At the fourth hearing, the alleged perpetrator was found not responsible. Doe dropped out of her classes and withdrew from the University's housing on October 15, 2014.

Doe filed suit against the University on October 1, 2015, and has since filed multiple amended complaints, asserting that the University's deliberate indifference to her alleged sexual assault violated Title IX. The University moved for dismissal of Doe's third amended complaint on February 20, 2018. In its motion, the University argued, among other things, that Doe was not a student at the University and was thus not deprived of an "education program or activity"

---

[2]We include the following allegations to give context to Doe's claim, but we do not believe that these allegations are necessary to conclude that the district court erred. In this opinion, we address only whether the district court properly concluded that Doe lacked standing, and we will not address the other arguments presented as alternative grounds for affirming the district court's grant of summary judgment.

under Title IX. 20 U.S.C. § 1681(a). Because the University attached multiple exhibits to its motion to dismiss, the district court treated the motion as a motion for summary judgment and allowed limited discovery related to the University's argument that, as a non-student, Doe could not bring suit. *Doe v. Univ. of Ky.*, 357 F. Supp. 3d 620, 623 (E.D. Ky. 2019). The district court concluded:

> Accordingly, the [c]ourt finds that while [Doe] was living on [the University]'s campus, paying various fees and costs associated with living on campus, and utilizing [the University]'s services, such as [the University]'s libraries and computer labs, [Doe] has failed to show she was either a [University] student or participating in any of [the University]'s educational programs or activities. Since [Doe] has failed to show she was either a [University] student or enrolled in a [University] education program or activity, [Doe] lacks standing to bring the present action under Title IX, and the Court need not consider [the University]'s arguments regarding the first three disciplinary hearings and [Doe]'s alleged failure to state a Title IX retaliation claim.

*Id.* at 633-34. Plaintiff filed a timely appeal challenging the district court's grant of summary judgment.

## II.

We review a district court's grant of summary judgment de novo. *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," and in turn, the reviewing court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986) (internal citations and quotation marks omitted).

Case: 2:18-cv-00736-MHW-EPD Doc #: 136 Filed: 08/24/20 Page: 9 of 11 PAGEID #: 2601

### III.

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). This statute has spawned various theories of liability and provides relief broadly to those who face discrimination on the basis of sex in the American education system. *See, e.g.*, *NCAA v. Smith*, 525 U.S. 459, 466 n.4 (1999) (recognizing that Congress amended Title IX to reject the Supreme Court's earlier attempts to limit Title IX's coverage to only the specific programs that received federal funding); *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) (allowing employees to sue under Title IX); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979) (allowing applicants to sue under Title IX); *Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265, 271-72 (6th Cir. 1994) (allowing student-athletes to sue under Title IX based on disparities in athletic programming).

In this case, however, we deal with a specific type of Title IX claim: a *Davis* claim. In *Davis v. Monroe County Board of Education*, the Supreme Court held that "recipients of federal funding may be liable for 'subjecting' their students to discrimination where the recipient is deliberately indifferent to known acts of *student-on-student* sexual harassment and the harasser is under the school's disciplinary authority." 526 U.S. at 646-47 (internal editing marks omitted) (emphasis added). In *Vance v. Spencer County Public School District*, this Court explained that, under *Davis*:

> Title IX may support a claim for *student-on-student* sexual harassment when the plaintiff can demonstrate the following elements: (1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school, (2) the funding recipient had actual knowledge of the sexual harassment, and (3) the funding recipient was deliberately indifferent to the harassment.

231 F.3d 253, 258-59 (6th Cir. 2000) (emphasis added). Our Court also recently emphasized that *Davis* claims "against a school for its response to *student-on-student* sexual harassment [involve] a 'high standard' that applies only in 'certain limited circumstances.'" *Kollaritsch*,

944 F.3d at 619 (emphasis added) (quoting *Davis*, 526 U.S. at 643). As emphasized, in each of these cases, the courts have spoken in terms of *student-on-student* sexual harassment.

Based on this language, the district court found that Doe did not have standing to bring her *Davis* claim because she was not a "student" at the University. We disagree. Although this Court does not wish to extend *Davis* beyond the scope intended by the Supreme Court, we find that the district court's decision was too rigid in this case and that, although Does was not enrolled as a student at the University, she has shown that, for purposes of her *Davis* claim, there remain genuine disputes as to whether she was denied the benefits of an "education program or activity" furnished by the University.

Although she was not technically enrolled in classes at the University, Doe lived in one of the University's residence halls, she paid the University directly for that housing. She also paid for a dining plan from the University. Moreover, Doe paid the University for various student fees, including fees for the student government association, student activities, access to the student center, a student health plan, technology, access to the recreation center, and student affairs.

Doe also alleges that she hoped to eventually enroll at the University after beginning her education at the Community College, and that was certainly a realistic goal. Kentucky's statutory scheme on higher education expressly facilitates the transfer of students from community colleges to public universities. Ky. Rev. Stat. § 164.092(2)(e) (Kentucky's "public college and university system [should] focus[] its efforts and resources on the goals of: . . . (e) Facilitating credit hour accumulation and transfer of students from [Kentucky community colleges] to four (4) year postsecondary institutions."). To achieve that end, the University has two programs that allow the Community College students to transfer to or earn credits toward a degree at the University while enrolled at the Community College.

With Doe paying the University directly for much of her educational experience—living on the University's campus, dining on campus, and participating in the University's student activities[3]—and the close academic relationship between the University and the Community College, we find that the sum of all these relationships to the University of Kentucky means that Doe has shown that there is a genuine dispute as to whether she was denied the benefit of an education program or activity of the University (not the Community College). *See Horner*, 43 F.3d at 272 ("Congress has made clear its intent to extend the scope of Title IX's equal opportunity obligations to the furthest reaches of an institution's programs. We will not defeat that purpose by recognizing artificial distinctions in the structure or operation of an institution.").[4]

### IV.

For these reasons, we **REVERSE** and **REMAND** for further proceedings so that the district court can rule on the merits of Doe's *Davis* claim in light of our decision in *Kollaritsch*, 944 F.3d at 619-24.

---

[3]We note that the University espouses the educational benefits of living on campus and participating in student activities:

> **[The University's] staff serves as a helpful resource for all residents, from *the programs and activities* run by Resident Advisors to the support of the full-time, live-in Resident Directors. Through the efforts of all of our staff members, living on campus is an inclusive, safe, and fun *learning* and living environment for our residents.**
>
> . . .
>
> **The Office of Residence Life's mission is to create inclusive residential communities that promote *student learning* and personal growth.**
>
> . . .
>
> Living on campus has a positive impact on a student's academic success . . . . Students are more like[ly] to succeed and return for their sophomore year if they live on campus.
>
> . . .
>
> We give students the opportunity to work and live with people from different backgrounds, and in the process, we encourage them *to learn from one another* in an atmosphere of mutual respect.

[4]In reaching this decision, we note that our decision is limited in two regards. First, our decision is limited to the unique circumstances of this case, and we do not expand *Davis* standing beyond those circumstances where a plaintiff is so closely tied to a university that the individual is essentially a student of that university. Furthermore, we also reiterate that *Davis* claims require that the harasser be "under the school's disciplinary authority." *Davis*, 526 U.S. at 647. Although that is not an issue here, as the parties agree that Doe's alleged harasser was a student of the University and thus under its disciplinary authority, we wish to re-iterate the importance of that requirement in light of our decision in this case.